UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES LISTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 4:06CV0532 AGF |
| | ) | |
| MICHAEL BOWERSOX, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court[1] on the petition of Missouri state prisoner, Charles Liston, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, habeas relief shall be denied.

Petitioner was convicted by a jury on August 8, 2002, of murder in the second degree (felony murder), murder in the first degree, and two related counts of armed criminal action. The second-degree murder conviction and one of the armed criminal action convictions stem from the shooting death of Jerome Harden during a robbery of Harden on December 28, 1999. The first-degree murder conviction and the other armed criminal action conviction stem from Petitioner's aiding and abetting the murder on May 3, 2000, of Danielle Montgomery, who gave the police information regarding Petitioner's involvement in the Harden murder. Petitioner was sentenced as a prior and persistent

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

offender[2] to life imprisonment for the second-degree murder conviction, a concurrent term of life imprisonment for the associated armed criminal action conviction, life imprisonment without the possibility of probation or parole for the first-degree murder conviction to run consecutively with the first two convictions, and life imprisonment for the other armed criminal action to run concurrently with the first-degree murder conviction but consecutively with the other convictions. The convictions and sentences were affirmed on direct appeal, and Petitioner was denied state postconviction relief. In the present action, Petitioner asserts that his constitutional rights were violated in the following ways:

> (1) the trial court improperly overruled Petitioner's hearsay objection to the testimony of a state's witness (Detective Jeffery Stone);
>
> (2-3) the trial court improperly joined the two murder charges and improperly denied Petitioner's motion for severance of these charges;
>
> (4) the trial court improperly denied Petitioner's motion for judgment of acquittal on the armed criminal action count relating to the first-degree murder charge, due to insufficient evidence that Petitioner knew a dangerous instrument would be used;
>
> (5) trial counsel rendered ineffective assistance in failing to call a certain witness to testify;
>
> (6) trial counsel rendered ineffective assistance in denying Petitioner's right to testify at trial; and
>
> (7) the postconviction motion court failed to address all the claims in Petitioner's pro se motion.

---

[2] Petitioner had prior felony convictions for second-degree assault; possession of a weapon; and failure to return to confinement. (Resp. Ex. A at 18.)

Respondent argues that habeas relief should be denied because claims (2), (3), and (7) are procedurally barred and that claims (1) and (4) are not cognizable in a federal habeas action. Further, Respondent asserts that the state court's adjudication of claims (1) through (6) was factually and legally reasonable.

## BACKGROUND

### Trial

Petitioner was charged on May 22, 2001, with two counts of murder in the first degree and two counts of armed criminal action. The counts were joined for trial and in two separate motions Petitioner moved for severance of the murder counts to avoid prejudice to Petitioner. Petitioner argued that denial of the motions would violate his federal constitutional rights. (Resp. Ex. A at 19-31.) The motions were denied and trial commenced on August 5, 2002, on all counts. The evidence established that on December 28, 1999, Petitioner shot Harden in the face during a robbery of Harden, and that several weeks later Harden died of the gunshot wound. Charity White and Demetrious Ursery were involved in the crime.

St. Louis police officer Detective Jeffrey Stone testified that on January 20, 2000, Montgomery, Petitioner's then-girlfriend, came to the police station, looking as if she had been beaten. Detective Stone testified that Montgomery told him that she had had a conversation with Petitioner. The prosecutor asked Detective Stone to tell the jury what he did as a result of the information he received from Montgomery, without saying what she said. Detective Stone responded: "At that time we were looking for [Petitioner] in

regards to the homicide. And we also placed wanteds out on two other individuals, one being Charity White and the other being Demetrious Ursery." Defense counsel's objection on the ground that Detective Stone's testimony about Montgomery's statements constituted "hearsay by inference" was overruled. (Resp. Ex. B. at 128-30.)

The evidence further established that on January 26, 2000, Montgomery came to the police station with Petitioner, at which time Petitioner was arrested for the Harden murder. Petitioner contacted three women he knew, White, Crystal Barge, and Sherlene Franklin, all of whom were gang-affiliated, as was Petitioner. The evidence established that Petitioner told them to kill Montgomery so that she could not implicate him in the Harden murder. On May 3, 2000, these three women tortured and brutally stabbed Montgomery to death, while Petitioner, who was in custody at a workhouse, spoke with the killers on the phone and encouraged them in the deed. Barge and Franklin both testified at trial that Petitioner asked them to kill Montgomery. Specifically with regard to the manner in which the killing was done, Barge testified that Petitioner told the women to do what they did to Montgomery. When asked if he told them to stab her, she responded, "He told us to do her in. That was the phone call kept coming in." Id. at 210. At trial, White refused to testify regarding Montgomery's murder, stating that she wanted a better deal. As such, her testimony was offered by way of her prior deposition, in which she testified that right before Montgomery's murder, Petitioner told her on the phone not to use a gun because it was too loud and because Montgomery needed "to suffer." (Resp. Ex. D at 10). Petitioner did not testify at trial.

At the close of the evidence, the Court examined Petitioner with regard to his decision not to testify. Petitioner told the court that he understood that he had the right to testify in his own defense if he wanted to, but that he had made the decision on his own not to testify. Petitioner represented that he was the one who made this decision, and that he was not forced or coerced in any way to do so. (Resp. Ex. B at 249.) In closing argument, defense counsel tried to shift the blame for instigating Montgomery's murder to Ursery, who together with White was involved in the shooting of Harden. Counsel noted, "you can't talk about the second murder unless you talk about the first murder." Id. at 263. The trial court instructed the jury to consider each count separately. Resp. Ex. A at 75.

**Direct Appeal**

On direct appeal, Petitioner argued that the trial court erred in overruling Petitioner's objection to Detective Stone's testimony, which left the jury to infer that Montgomery told him that Petitioner was involved in Harden's murder and that this is why Petitioner wanted her killed. Petitioner also argued that the trial court erred in denying Petitioner's motion to sever offenses, and in overruling Petitioner's motion for judgment of acquittal as to the armed criminal action in connection with Montgomery's murder. The state appellate court held that joinder of the offenses was not improper, because Petitioner's actions were the result of "a single, continuous motive." The court found Petitioner's argument that the jury might have been unable to distinguish and separately apply the evidence to each murder to be without merit because the manner of

the two murders was different and furthermore, had the murders been tried separately, the evidence of both murders would have been admissible in each trial to prove motive and intent. Lastly, the court found that there was sufficient evidence to prove that Petitioner knew that Montgomery's murder involved the use of a dangerous instrument or deadly weapon, and thus to convict him for armed criminal action in connection with that murder. The court pointed to the evidence that during the murder, Petitioner told one of the killers to do what they were doing, and that he had told another of the women not to use a gun and to make Montgomery suffer. (Resp. Ex. G.)

**State Postconviction Proceedings**

Petitioner filed a pro se motion for postconviction relief under Missouri Supreme Court Rule 29.15 on November 4, 2002. In an amended motion filed by appointed counsel, Petitioner raised two claims relevant to the present action. He claimed that his trial counsel was ineffective for failing to call Ernestine Clark as a witness, despite Petitioner's request that she be called. According to Petitioner, Clark would have testified that she was confined with White following Montgomery's murder and that White told her that she (White) was implicating Petitioner in Montgomery's murder to protect Ursery. Petitioner also claimed that defense counsel was ineffective for "suppressing" Petitioner's right to testify by telling him that if he testified, defense counsel would allow the prosecutor to "have his way" with Petitioner. Postconviction counsel attached several other claims of ineffective assistance of counsel, drafted by Petitioner, which Petitioner asked her to include in the motion. (Resp. Ex. H at 16-33.)

These additional claims were not pursued on appeal from the denial of the motion and, as will be discussed below, therefore are not properly before this Court.

A hearing was held on April 15, 2004, at which Petitioner and his trial counsel testified. Petitioner testified that he asked defense counsel if he (Petitioner) could testify at trial and counsel responded that he would be "a complete idiot" if he did so and that "the prosecutor would have his way" with Petitioner. Petitioner acknowledged that counsel told him that he had an absolute right to testify on his own behalf. But Petitioner stated that counsel had discouraged him from testifying. Petitioner admitted that his decision not to testify was "basically" voluntary, although counsel's "little comments" influenced him. Petitioner stated that had he testified at trial, he would have denied his involvement in the two murders. When asked on cross-examination about his statements to the court regarding the voluntariness of his decision not to testify, Petitioner explained that he had a lot going on in his mind that day and was not thinking straight. Petitioner also testified that he had asked defense counsel to call Clark to testify at trial. Petitioner's postconviction counsel informed the court that she had spoken with Clark on the morning of the hearing and that Clark indicated that she would be at the hearing, but that she had not yet shown up. (Resp. Ex. I at 5-13, 16-17.)

Petitioner's trial counsel testified that he told Petitioner that if he took the stand he would be exposing himself to the questions of the prosecutor. For that reason, and due to the weight of the evidence against Petitioner, counsel "encouraged him very heavily" not to testify. Counsel testified that Petitioner made the decision not to testify after counsel

told him "very forcibly" that it would not be in Petitioner's best interest to testify. On cross-examination, counsel denied that he told Petitioner that if Petitioner took the stand, counsel would let the prosecutor "have his way with" Petitioner. Rather, he testified that he told Petitioner, in essence, that if he took the stand, he (defense counsel) could object some of the time, but sometimes Petitioner would be at the mercy of the prosecutor. Counsel testified that had Petitioner still wanted to testify after they had discussed the matter, counsel would have put Petitioner on the stand. With regard to Clark, defense counsel testified that he spoke with her prior to trial and gave her a subpoena to appear at trial, but she did not show up. Counsel testified that he had decided not to ask for a writ of attachment for fear that that would have made Clark hostile. Id. at 19-34.

The motion court held that defense counsel took adequate steps to obtain Clark's testimony. The court noted that Clark also did not show up at the postconviction hearing, and stated that the failure to present evidence at a post conviction hearing to support a factual allegation constitutes abandonment of that claim. The court also rejected Petitioner's right-to-testify claim, stating that generally, defense counsel's advice on whether the defendant should testify is a matter of trial strategy. The court stated further that counsel had a duty to inform Petitioner of the hazards of taking the witness stand, and that Petitioner's prior convictions would have been brought out had he testified. The motion court also pointed to Petitioner's representations at trial that it was his own decision not to testify and that he was not coerced into making the decision. (Resp. Ex. H at 34-38.)

On appeal from the denial of postconviction relief, Petitioner pursued only the two claims discussed above. The Missouri Court of Appeals held that the motion court's findings and conclusion that defense counsel took adequate steps to obtain Clark's testimony were not clearly erroneous. The appellate court noted Clark's refusal to attend the trial or the postconviction hearing and believed that this indicated that ultimately, she was unwilling to testify on Petitioner's behalf. Thus, reasoned the court, regardless of whether Clark's testimony would have provided a viable defense, Petitioner failed to support his claim that counsel was ineffective for not calling her. (Resp. Ex. L.)

On Petitioner's second claim, the appellate court held that the record "amply" supported the motion court's findings and conclusions that defense counsel's advice to Petitioner not to testify was reasonable trial strategy and that Petitioner's decision not to testify was Petitioner's alone and was made voluntarily. The appellate court held that counsel's strong advice to petitioner not to testify so as to avoid the hazards of cross-examination was reasonable trial strategy, and that Petitioner's statements to the court on the matter belied his claim that counsel's advice suppressed his right to testify. Id.

**Federal Habeas Petition**

As noted above, Petitioner claims that his federal constitutional rights to a fair trial, to the effective assistance of counsel, and to testify at his trial were violated in the following ways:

(1) the trial court improperly overruled Petitioner's hearsay objection to Detective Stone's testimony;

(2, 3) the trial court improperly joined the two murder charges and denied Petitioner's motion for severance;

(4) the trial court improperly denied Petitioner's motion for judgment of acquittal on the armed criminal action count relating to the first degree murder charge because of insufficient evidence;

(5) trial counsel rendered ineffective assistance in failing to call Clark to testify;

(6) trial counsel rendered ineffective assistance in denying Petitioner's right to testify at trial; and

(7) the postconviction motion court failed to make findings of fact and conclusions of law on all of Petitioner's claims.

**DISCUSSION**

Respondent argues that Petitioner's claims (2) and (7) are not properly before this court because they were procedurally defaulted in state court, and that claims (1) and (4) are not cognizable in this action. Rather than discuss these arguments, with which the Court disagrees except as to claim (7),[3] the Court will proceed directly to consider the merits of Petitioner's claims. See, e.g.,Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004) (a federal habeas court may by-pass a procedural default question and proceed to the merits).

---

[3] For example, Respondent asserts that Petitioner's claim that the overruling of his hearsay objection to part of Officer Stone's testimony violated his constitutional rights (to a fair trial) is not cognizable in a federal habeas proceeding. While the standard for establishing such a constitutional violation is very high, as discussed later above, the claim itself is cognizable. And Respondent's argument that the joinder claim was procedurally defaulted because Petitioner did not present a federal constitutional basis for his claim on this matter is not supported by the record.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court]'s decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (citation omitted). A decision by a state court is "contrary to" clearly established federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases'" or if it "'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'" Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

> A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision

> applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.

Price, 538 U.S. at 641(internal quotations and citations omitted); see also Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008).

The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence." Id.; § 2254(e)(1).

**Overruling Petitioner's Hearsay Objection**

Petitioner's first claim fails for several reasons. First, Montgomery's inferred statements implicating Petitioner in Harden's murder were not introduced for the truth of the matter asserted therein, i.e., that Petitioner was involved in Harden's murder, but rather to explain the actions of the police subsequent to the interview with Montgomery. Further, to the extent that Detective Stone's testimony was introduced to establish Petitioner's motive for orchestrating Montgomery's murder, this is also not a hearsay problem. Lastly, to the extent Petitioner is claiming that the trial court's ruling on the matter deprived him of a fair trial, such a due process claim fails as the testimony in question did not infect the trial with unfairness. See, e.g., Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996) (holding that a state court's evidentiary rulings can form the basis for federal habeas relief under the Due Process Clause only when they were so conspicuously prejudicial or of such

magnitude as to fatally infect the trial with unfairness). It is not clear from Detective Stone's testimony that Montgomery actually implicated Petitioner, as opposed to Ursery and White, in Harden's murder, and there was an abundance of other evidence establishing Petitioner's motive for Montgomery's murder.

**Joinder of Charges**

To obtain federal habeas relief for a state court's failure to sever different charges for trial, a Petitioner must show that the failure to grant severance rendered the trial "fundamentally unfair." Wharton-El v. Nix, 38 F.3d 372, 374 (8th Cir. 1994). Here the state appellate court's finding that the two murders were part of a continuous plan is presumed to be correct under § 2254(e)(2). See id. Even defense counsel recognized that "you can't talk about the second murder unless you talk about the first murder." Furthermore, as noted above, the trial court instructed the jury to consider Petitioner's guilt for each count separately. As such, the state court's adjudication of this claim was factually and legally reasonable. See id.

**Sufficiency of the Evidence**

The Due Process Clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). In the § 2254 setting, the federal court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Evans v. Luebbers, 371 F.3d 438, 441 (8th Cir. 2004).

Plaintiff argues that the evidence was insufficient to prove beyond a reasonable doubt that he knew that Montgomery would be killed by use of a deadly weapon, as required to find him guilty of armed criminal action in connection with Montgomery's murder. While the evidence that Petitioner knew the killers would use a dangerous instrument or deadly weapon may not have been direct, the Court concludes upon review of the record, that the state courts' finding that the evidence was sufficient to establish that Petitioner did know this fact, is not based on an unreasonable determination of the facts in light of the evidence presented at trial. See Cassell v. Lockhart, 886 F.2d 178, 179 (8th Cir. 1989) ("[W]hether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt is everyday business for the state courts, grist for their mill, and it will be a rare case in which a federal court on habeas will disagree with them.") (citation omitted).

**Ineffective Assistance of Defense Counsel for Failing to Call Clark as a Witness**

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 689 (1984). Here, the state courts found that defense counsel's performance on this matter did not fall below an objective standard of reasonableness. Upon review of the

record, this Court cannot say that the state courts' adjudication of this claim was unreasonable. See Williams v. United States, 452 F.3d 1009, 1014 (rejecting ineffective of assistance claim where defense counsel made reasonable efforts to locate an alibi witness when she voluntarily absented herself mid-trial in contravention of her subpoena); Blair-Bey v. Nix, 44 F.3d 711, 713 (8th Cir. 1995) (affirming district court's conclusion that the evidence was sufficient that defense counsel made reasonable efforts to locate two recalcitrant witnesses). Furthermore, Clark's presumed testimony would have only called White's testimony into question, and not the testimony of the other two killers that Petitioner directed Montgomery's murder.

**Right to Testify**

A criminal defendant has a constitutional right to testify at his trial and any waiver of this fundamental constitutional guarantee must be knowing and voluntary. Berkovitz v. Minnesota, 505 F.3d 827, 828 (8th Cir. 2007); Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998). Here the state courts reasonably found that Petitioner was not unduly influenced or coerced by counsel's advice that he not testify. See Berkowitz, 505 F.3d at 828 (holding that habeas petitioner was not unduly influenced or coerced when her trial attorneys stated that they were a "hundred five percent sure" that she should not testify and "[i]f we should allow you to testify we are going to lose"). The trial court, on the record, ascertained that Petitioner understood that he had the right to testify and made the voluntary decision not to do so, and Petitioner admitted at the postconviction hearing that defense counsel told him that the decision was Petitioner's. Moreover, Petitioner remained

silent after defense counsel rested. See id. ("We have previously held that a knowing and voluntary waiver of the right may be found based on a defendant's silence when his counsel rests without calling him to testify"); Winfield v. Roper, 460 F.3d 1026, 1035 (8th Cir. 2006) (same).

**Postconviction Court's Failure to Address Claims Attached to Petitioner's Motion**

As noted above, the claims attached to the amended motion for postconviction relief were not pursued on appeal from the denial of that motion, and were thus procedurally defaulted in state court. See, e.g., Interiano v. Dormire, 471 F.3d. 854, 856 (8th Cir. 2006). Petitioner asserts that the reason the claims were not pursued on appeal is because they were abandoned by postconviction counsel. However, as there is no constitutional right to counsel in state postconviction proceedings, the ineffective assistance of postconviction counsel, either in the motion court or on appeal, cannot constitute cause to excuse a procedural default. Id.; Taylor v. Bowersox, 329 F.3d 963, 971 n.13 (8th Cir. 2003). These claims are thus not properly before this Court.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural and substantive issues in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(2). See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000) (setting forth the standard for issuing a Certificate of Appealability); Langley v. Norris, 465 F.3d 861, 862-63 (8th Cir. 2006) (same).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Charles Liston for habeas corpus relief is **DENIED**.

AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of March, 2009.